UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
JESUS O.,

                        Plaintiff,          <u>DECISION AND ORDER</u>
                                            7:22-cv-01574-GRJ

           v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

       In August of 2014, Plaintiff Jesus O.[1] applied for Disability Insurance

Benefits and Supplemental Security Income Benefits under the Social

Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel,

commenced this action seeking judicial review of the Commissioner's

denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties

consented to the jurisdiction of a United States Magistrate Judge. (Docket

No. 12).

       This case was referred to the undersigned on March 17, 2023.

Presently pending are the parties' Motions for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 21, 25). For the following reasons, Plaintiff's motion is due to be granted, the Commissioner's motion is due to be denied, and this case is remanded for further administrative proceedings.

## I.  BACKGROUND

### A.    *Administrative Proceedings*

Plaintiff applied for benefits on August 27, 2014, alleging disability beginning July 1, 2013. (T at 245-67, 268-69).[2]  Plaintiff's applications were denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").  Hearings were held on January 27, 2017, and June 27, 2017, before ALJ Lisa Hibner. (T at 45-77, 78-94).

On September 25, 2017, ALJ Hibner issued a decision denying the applications for benefits. (T at 19-39).  The Appeals Council denied Plaintiff's request for review. (T at 5-11).  Plaintiff commenced an action in the United States District Court for the Southern District of New York seeking judicial review.

On April 23, 2020, the Honorable Nathaniel Fox, United States Magistrate Judge, entered an Order approving a stipulation between the

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 14.

parties remanding the case for further proceedings. (Docket No. 35 in case number 1:19-cv-00077-KNF).

The Appeals Council issued a remand order on July 22, 2020. (T at 840-45).  The matter was assigned to ALJ Lori Romeo, who held an administrative hearing on April 28, 2021. (T at 788-823).  Plaintiff appeared with an attorney and testified. (T at 796-809). The ALJ also received testimony from Regina Malik, a vocational expert. (T at 810-820).

B.    ALJ's Decision

On August 2, 2021, ALJ Romeo issued a decision denying the applications for benefits. (T at 750-83).  The ALJ found that Plaintiff did not engage in substantial gainful activity between July 1, 2013 (the alleged onset date) and December of 2017; and did not engage in substantial gainful activity between 2020 and August 2, 2021 (the date of her decision). (T at 756).  The ALJ found that Plaintiff did engage in substantial gainful activity in 2018 and 2019. (T at 756).  The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023 (the date last insured). (T at 756).

The ALJ concluded that Plaintiff's degenerative disc disease in the lumbar spine, obesity, bipolar disorder, schizoaffective disorder, depressive disorder, and substance use disorder were severe impairments as defined

3

under the Act. (T at 757).  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 757).

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: he needs a sit/stand option every hour, but can remain on task whether sitting or standing; he can occasionally stoop and climb stairs, but cannot crawl, kneel, climb ladders/ropes/scaffolds; and he should not crouch, run, or perform work on narrow slippery surfaces or erratically moving surfaces. (T at 760).

The ALJ found Plaintiff limited to work that requires little or no judgment to perform simple duties that a person can learn on the job in a short period of time (30 days or less), usually specific vocation preparation (SVP) of one or two as rated in the *Selected Characteristics of Occupations* (SCO). (T at 760).  In addition, the ALJ determined that Plaintiff is capable of low stress work (defined as requiring only occasional decision making and changes in the work setting), should work with objects rather than with people, and can have no more than occasional interaction with coworkers

4

(i.e., he can work in proximity to co-workers, but not on joint tasks) and he can have no interaction with the public. (T at 760).

The ALJ concluded that Plaintiff could not perform his past relevant work as a warehouse worker, doorman, or porter cleaner. (T at 773-74). However, considering Plaintiff's age (32 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 774-75).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between July 1, 2013 (the alleged onset date) and August 2. 2021 (the date of the ALJ's decision). (T at 775).  On January 19, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 742-49).

C.   *Procedural History*

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on February 25. 2022. (Docket No. 1).  On October 25, 2022, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 21, 22)  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a

memorandum of law, on December 22, 2022. (Docket Nos. 25, 26).  On

January 17, 2023, Plaintiff submitted a reply memorandum of law in further

support of his motion. (Docket No. 27).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a

claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

The court's review is limited to "determin[ing] whether there is substantial

evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566

F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings,

which are considered conclusive if supported by substantial evidence. *See*

42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla"

and "means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec*.,

562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by

substantial evidence, the reviewing court is required to examine the entire

record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

See *Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises one main argument in support of his request for reversal of the ALJ's decision.  Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed, which undermines the balance of her decision, including the RFC determination and step five analysis.

A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).[3]

A "treating physician" is the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

Treating physician opinions are considered particularly probative because they "are likely to be the medical professionals most able to

_____

[3] In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence.  The revised regulations apply to claims filed on or after March 27, 2017.  See 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits before that date, the new regulations do not apply here.

provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

An opinion from a treating physician is afforded controlling weight as to the nature and severity of an impairment, provided the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

However, treating physician opinions are not always dispositive.  For example, an opinion will not be afforded controlling weight if it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

To determine how much weight a treating physician's opinion should be given, the ALJ considers the "*Burgess* factors" identified by the Second Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the

physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019)(following *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

The *Burgess* factors are also applied to the opinions of non-treating physicians, "with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant." *McGinley v. Berryhill*, No. 17 Civ. 2182, 2018 WL 4212037, at *12 (S.D.N.Y. July 30, 2018).  A consultative physician's opinion may constitute substantial evidence. *See Petrie v. Astrue*, 412 F. Appx 401, 406 (2d Cir. 2011).

The record contains several medical opinions.  This Court will summarize the opinions and then address the ALJ's analysis.

1. *Dr. Kazi*

In January of 2016, Dr. Noor Kazi, Plaintiff's treating psychiatrist, completed a medical source statement.  Dr. Kazi assigned a Global Assessment of Functioning ("GAF")[4] score of 48. (T at 463). "A GAF in the range of 41 to 50 indicates '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to

---

[4] The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *Pollard v. Halter*, 377 F.3d 183, 186 (2d Cir. 2004).

keep a job).'" *Zabala v. Astrue*, 595 F.3d 402, 406 n.2 (2d Cir. 2010)(citation omitted).

Dr. Kazi opined that Plaintiff would be absent from work more than 3 times per month due to his impairments or treatment. (T at 464).  He assessed marked or extreme loss in Plaintiff's ability to understand, remember, and carry out instructions and respond appropriately to supervision, co-workers, and work pressure. (T at 465-66).  Dr. Kazi found extreme restriction in Plaintiff's activities of daily living; extreme difficulties in maintaining social functioning; constant deficiencies in concentration, persistence, and pace; and continual episodes of deterioration or decompensation in work or work-like settings. (T at 466-67).

### 2.  Dr. Tedoff

Dr. Howard Tedoff performed a consultative psychiatric evaluation in October of 2014.  Dr. Tedoff diagnosed bipolar disorder, learning disorder (reading and math), and substance abuse in short-term remission. (T at 452).  He assessed mild limitation in Plaintiff's ability to follow and understand simple directions and perform simple tasks; mild limitation in maintaining attention and concentration; and moderate impairment with respect to maintaining a regular schedule. (T at 452).

Dr. Tedoff found Plaintiff's decision-making skills "moderately impaired[,] but hopefully improving" and believed Plaintiff would have difficulty relating adequately with others and dealing with workplace stress. (T at 452). He characterized the prognosis for Plaintiff being able to obtain and sustain employment "in the near future" as "guarded to poor." (T at 452).

### 3. Dr. Harding

Dr. T. Harding, a non-examining State Agency review physician, completed an assessment in October of 2014. Dr. Harding found mild restriction in Plaintiff's activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T at 102, 104-105). Dr. Harding noted that Plaintiff had poor judgment and difficulties dealing with stress and relating to others. (T at 105).

### 4. Dr. Didio

In March of 2017, Dr. Daryl Didio, a psychologist, reviewed Plaintiff's records and responded to interrogatories from the ALJ. Dr. Dido assessed mild to moderate impairment in Plaintiff's ability to understand, remember, and carry out instructions; moderate limitation in Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public; moderate

limitation in Plaintiff's capacity to concentrate, persist, or maintain pace; and moderate impairment in adapting or managing himself. (T at 610-11, 614). Dr. Dido opined that Plaintiff retained the "cognitive, emotional resources to perform simple, routine tasks in a low socially impacted environment ...."[5] (T at 617).

### 5.   ALJ's Analysis

The ALJ assigned "little weight" to Dr. Kazi's opinion. (T at 771).

The Court finds the ALJ's decision to discount Dr. Kazi's opinion generally supported by substantial evidence but concludes that a remand is required with respect to one aspect of the decision.

The ALJ reasonably found the longitudinal treatment record and Plaintiff's reported activities of daily living inconsistent with Dr. Kazi's extremely restrictive opinion.  *See, e.g., Knief v. Comm'r of Soc. Sec.*, No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Riaz v. Comm'r of Soc. Sec.*, No. 20-CIV-8418-JPCSLC,

---

[5] "frequent contact"

2022 WL 6564018, at *15 (S.D.N.Y. Aug. 5, 2022), *report and recommendation adopted*, No. 20-CIV-8418-JPCSLC, 2022 WL 4482297 (S.D.N.Y. Sept. 27, 2022)("Accordingly, the ALJ appropriately concluded Dr. Ravelo's asserted limitations were not supported by or consistent with the objective medical and Record evidence.")(collecting cases).

While the record documents waxing and waning of psychiatric symptoms, sufficient evidence exists to sustain the ALJ's conclusion that Plaintiff's symptoms were well-managed when he complied with treatment and was not engaged in substance abuse.

Treatment notes contained generally stable clinical findings, with reports that Plaintiff's symptoms were well-controlled. (T at 1507, 1526, 1535, 1546, 1557, 1565, 1571, 1587, 1599, 1614, 1626, 1636, 1648, 1659, 1673, 1680, 1685, 1697, 1896, 1910, 1921).  Plaintiff was able to attend to personal care, perform laundry and light cleaning, prepare simple meals, and use public transportation. (T at 69-71, 217-18, 314-15, 769-70, 806). He worked part-time and full-time after the alleged onset date. (T at 770, 801-02, 1027-28).

While Plaintiff references reports of ongoing psychiatric symptoms and offers an alternative reading of the record, the issue is not whether there is some support for a contrary conclusion, but whether substantial

evidence supports the ALJ's conclusion that Plaintiff was not as limited as Dr. Kazi believed.  *See DuBois v. Comm'r of Soc. Sec*., No. 20-CV-8422 (BCM), 2022 WL 845751, at *8 (S.D.N.Y. Mar. 21, 2022)("To be sure, there is some evidence in the record that would support the conclusion that plaintiff had greater limitations than those the ALJ built into her RFC. But that is not the test.").

The ALJ's decision to discount Dr. Kazi's very restrictive opinion is also supported by the assessments of the non-examining State Agency review physician, consultative examiner, and reviewing expert.  As discussed above, Dr. Harding, Dr. Tedoff, and Dr. Dido assessed mild to moderate limitation in Plaintiff's ability to meet the mental demands of basic work activity. (T at 104-105, 452, 610-17).

Although the ALJ found Plaintiff somewhat more limited than these physicians, the assessments from Dr. Harding, Dr. Tedoff, and Dr. Dido provide support for the ALJ's decision to discount Dr. Kazi's extremely restrictive opinion. *See Sanchez v. Berryhill*, No. 16-CV-07775 (PGG) (DF), 2018 WL 1472687, at *20 (S.D.N.Y. Feb. 28, 2018), *report and recommendation adopted sub nom. Sanchez v. Comm'r of Soc. Sec*., No. 16-CIV-7775-PGG-DCF, 2018 WL 1478040 (S.D.N.Y. Mar. 23, 2018)("[W]hile both of the consultants did opine that Plaintiff had certain of

the same or similar mental impairments as those assessed by [treating provider], their views as to the 'mild' or 'moderate' severity of those impairments … did not support [the treating provider's] expressed view that many of Plaintiff's impairments were 'marked' or 'extreme.'")(internal citations omitted).

Plaintiff points to Dr. Tedoff's opinion that Plaintiff's prognosis for being able to obtain and sustain employment "in the near future" was "guarded to poor." (T at 452).  In context, however, Dr. Tedoff's pessimism arose from Plaintiff's need to complete rehabilitation for substance abuse, rather than a long-term concern about Plaintiff's ability to perform the mental demands of basic work activity.  Dr. Tedoff's assessment of Plaintiff's prognosis is immediately followed by the statement: "He needs to complete rehab." (T at 452).

Plaintiff is also critical of Dr. Dido's opinion, arguing that it is internally inconsistent.  In a narrative section of his report, Dr. Dido opines that Plaintiff is limited to a "low socially impacted environment," but then appears to state that Plaintiff can tolerate "frequent contact with others." (T at 617).  Although Dr. Dido's handwriting is not entirely legible it is possible he intended to state that the work environment should *not* include frequent contact with others.  In any event, even assuming the reading suggested by

Plaintiff, this is not material, as the ALJ did not find that Plaintiff could have frequent contact with others.  Rather, the ALJ limited Plaintiff to work that involved objects rather than people, no contact with the public, and no more than occasional interaction with co-workers. (T at 760).

Notwithstanding the above, the Court, nonetheless, concludes a remand is necessary regarding Plaintiff's ability to interact with supervisors.

Dr. Kazi opined that Plaintiff had extreme loss in his ability to accept instructions and respond appropriately to criticism from supervisors. (T at 466).

Although the ALJ was not necessarily obliged to accept this restrictive an assessment, there is significant evidence of limitation in this domain, which the ALJ did not adequately address.

Plaintiff has well-documented problems relating to authority figures, including a landlord who obtained an order of protection against him. (T at 514-24, 1768-72, 1778-79, 1788-95, 1881-82, 1913-14).  Dr. Dido assessed moderate impairment in Plaintiff's ability to interact appropriately with supervisors. (T at 611).  Dr. Harding opined that Plaintiff had moderate limitation with respect to accepting instructions and responding appropriately to criticism from supervisors. (T at 105).

The ALJ recognized this evidence.  In the narrative portion of the decision, the ALJ stated that the "record also supports that [Plaintiff's] mental impairments limits [*sic*] him to … no work with the public and occasional contact *with supervisors* as well as with co-workers." (T at 773)(emphasis added).

Notably, however, the actual RFC determination does not include any limitation with respect to Plaintiff's ability to accept workplace supervision. (T at 760).  In addition, the hypotheticals presented to the vocational expert included a limitation to occasional interaction with co-workers but made no reference to any limitation regarding interacting with supervisors, responding to their demands, and/or accepting their criticism. (T at 812-13, 817).  The ALJ did not address or explain this discrepancy.

"The public, supervisors, and co-workers are distinct groups, and are separately addressed on the Commissioner's mental residual capacity forms." *Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL 7223235, at *5 (W.D.N.Y. Dec. 8, 2020) (citation and alteration omitted); *see also Fuller v. Berryhill,* No. 17-CV-00887-LGF, 2019 WL 421484, at *4 (W.D.N.Y. Feb. 4, 2019) ("[T]he groups of the public, supervisors, and co-workers are distinct for purposes of assessing an applicant's capacity to relate to others....").

The ALJ erred by failing to adequately address the question of whether and to what extent Plaintiff can interact with supervisors and then failing to consider the impact of such limitation on Plaintiff's occupational base. *See, e.g., Smith v. Colvin*, No. 1:16-CV-00295 (MAT), 2017 WL 489701, at *3 (W.D.N.Y. Feb. 7, 2017) ("a limitation in interacting with the public is not equivalent to a limitation interacting with coworkers or supervisors."); *Nickens v. Colvin*, No. 14-140, 2014 WL 4792197, at *2 (W.D. Pa. Sept. 23, 2014) ("The public, supervisors, and co-workers are distinct groups, and are separately addressed on the Defendant's mental residual capacity forms. Thus, limitations on two of these types of interactions in the RFC does not account for limitations on the third.").  A remand is, therefore, required for proper consideration of this issue.

B.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also*

*Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).  Here, the Court finds a remand necessary for proper consideration of Plaintiff's limitation with respect to interacting with supervisors in the workplace.

The Court is mindful that Plaintiff's initial applications for benefits have been pending for more than nine (9) years and this matter has already been remanded once.  As such, this Court exercises its discretion and directs that proceedings before the ALJ be completed within 120 days of the date hereof.  If the decision is a denial of benefits, then a final decision shall be rendered within 60 days of any appeal by Plaintiff.  *See Martinez v. Saul*, No. 19-CV-6515 (BCM), 2021 WL 2588783, at *11 (S.D.N.Y. June 23, 2021).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 21) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 25) is DENIED; and this case is REMANDED for further proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment and then close the file.

Dated: September 5, 2023

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge